OPINION
Defendant-appellant Randy Stanley appeals from the denial of his petition for post-conviction relief, without a hearing. Stanley contends that the trial court abused its discretion by permitting the State to file an untimely response to his petition, in the form of a motion for summary judgment. The balance of Stanley's assignments of error contend that the trial court erred by granting the summary judgment and denying his petition without a hearing. Although we agree with Stanley that not all of his claims are barred by the doctrine of res judicata, we conclude that none of his factual allegations, even if credited in full, entitled him to relief. Accordingly, we conclude that the trial court did not err when it denied his petition without a hearing, and the judgment of the trial court is Affirmed.
 I
Shortly after midnight on June 14, 1998, Stanley struck his girlfriend, Jill Coates, the mother of his child, at least twice in the head, and also grabbed her by the throat. This much was admitted by Stanley, who testified in his own defense at trial.
Stanley was arrested, and ultimately indicted for Attempted Murder and Felonious Assault. Following a jury trial, Stanley was acquitted of Aggravated Murder, but convicted of Felonious Assault, and was sentenced to eight years imprisonment.
Stanley's direct appeal from his conviction and sentence was unsuccessful. He filed this petition for post-conviction relief on October 25, 1999. He subsequently filed a motion to amend his petition, and a motion for an extension of time within which to file his amended petition, which was granted. On February 15, 2000, Stanley filed his amended petition for post-conviction relief.
On October 6, 2000, the State not having responded to his motion, Stanley filed a request to proceed without a response from the State. He reiterated his request for an evidentiary hearing. On October 30, 2000, the State moved for leave to file a motion for summary judgment, as its response to Stanley's petition. In this motion, the State recited that "[it] cannot be certain whether a copy of the amended petition was ever delivered to the Prosecutor's office pursuant to statute. Upon Defendant's filing on October 6, 2000 of a request for a ruling on his motion, the State became aware that he had in fact filed his amended petition on February 15. The State had to obtain a copy of the amended petition from the trial court." The trial court granted the State's motion, allowing it leave to file a motion for summary judgment within five days from October 30, 2000. The State filed its motion for summary judgment on November 2, 2000, within the time the trial court had allowed. Thereafter, Stanley filed his memorandum in opposition to the State's motion for summary judgment.
By entry filed January 26, 2001, the trial court granted the State's motion for summary judgment, and denied Stanley's petition. The trial court found that all of Stanley's claims could have been raised on direct appeal, so that they were all barred by the doctrine of res judicata. From the denial of his petition for post-conviction relief, without a hearing, Stanley appeals.
 II
Stanley's First Assignment of Error is as follows:
 ABUSE OF DISCRETION [SIC] AND ERROR OF THE TRIAL COURT BY GRANTING STATE LEAVE TO RESPOND UNTIMELY, CONSIDERING AND GRANTING STATES MOTION FOR SUMMARY JUDGMENT, FAILING TO ADDRESS APPELLANTS MOTION TO PROCEED WITHOUT PROSECUTORS RESPONSE [SIC], AND APPELLANTS OBJECTION TO GRANTING STATE LEAVE TO RESPOND.
Essentially, Stanley argues that the State's obligation to respond to a petition for post-conviction relief within the time limit prescribed by R.C. 2953.21(B) is mandatory, and may not be enlarged by the trial court. We disagree. Unlike the statutory time limit for the filing of the petition, itself, which is jurisdictional, the time limit for the State's response is not jurisdictional. In our view, the trial court had discretion to grant the State's motion for additional time within which to respond, and did not abuse its discretion by providing the State with five days within which to file its response, upon the State's representation that it could not determine whether it had been served by the clerk with a copy of Stanley's amended petition.
In any event, even if the trial court abused its discretion in this regard, the error is harmless. In connection with Stanley's other assignments of error, we conclude that Stanley's claims for relief, even if all of his factual allegations are credited in full, are without merit. Accordingly, the denial of Stanley's petition, without a hearing, was proper, even in the absence of any responsive filing by the State.
Stanley's First Assignment of Error is overruled.
 III
Stanley's Second, Third and Fourth Assignments of Error are as follows:
 ABUSE OF DISCRETION [SIC] AND ERROR BY TRIAL COURT BY GRANTING STATE SUMMARY JUDGMENT.
 ABUSE OF DISCRETION [SIC] AND ERROR OF TRIAL COURT BY FINDING ALL OF APPELLANTS ISSUES BARRED BY RES JUDICATA, STATING THEY COULD HAVE BEEN RAISED ON DIRECT APPEAL.
 ABUSE OF DESECRATION [SIC] AND ERROR OF TRIAL COURT BY NOT GRANTING THE APPELLANT AN EVIDENTERY [SIC] HEARING WHEN HE RAISED ISSUES OF A CONSTITUTIONAL MAGNITUDE, AND PRESENTED SUFFICIENT EVIDENCE OUTSIDE THE RECORD THAT WARRANTED [SIC] RELIEF.
All of these assignments of error essentially contend that the trial court erred in denying Stanley's petition without a hearing.
We have reviewed the entire transcript of the trial, in conjunction with Stanley's evidentiary material in support of his petition for post-conviction relief, and we conclude that his trial attorney performed admirably. There was evidence in the record to support the charge of Attempted Murder. Although we do not say that the jury reached the wrong verdict in that regard, we are prepared to say that Stanley's attorney, an experienced trial attorney, can take pride in having secured an acquittal on that charge.
 A
The first ground Stanley alleged in his amended petition was that his trial counsel was ineffective for having failed to utilize evidence available to impeach the State's witnesses' testimony concerning the severity of the victim's injuries.
An essential element of Felonious Assault is the infliction of serious physical harm. Serious physical harm is defined, in R.C. 2901.01(A)(5), as follows:
 "Serious physical harm to persons" means any of the following:
(a) ***;
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, serious disfigurement;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
We have examined the evidentiary material that Stanley submitted in support of his assertion that his trial counsel was ineffective in attacking the seriousness of the harm he inflicted upon his victim. One of these is a document that appears to be the report by the emergency medical technicians who arrived at the scene and took the victim to the hospital. Stanley makes much of the remark, in that statement, "No bleeding present." This statement, however, is not necessarily inconsistent with the statement by others, including Stanley, himself, that the victim had bled before the EMT's arrived to take her to the hospital.
In his long, and somewhat rambling, argument in his amended petition in support of this ground for relief, Stanley argues that there is no support in the record for the arresting officer's comment, when shown photographs of the victim, that she had been cleaned up before the photographs were taken. However, we have reviewed the transcript of the trial, and we find evidence in the record to corroborate the officer's statement. For example, the nurse who admitted the victim to the hospital, Angela Lee Stills, testified that the pictures were taken after Coates was cleaned up.
Numerous witnesses described the injuries that Stanley inflicted upon Coates as being severe, even alarming. These included health care professionals who compared the injuries adversely to other injuries they had seen in the course of their professional careers. The jury also had photographs of the victim, which showed her with numerous, apparently severe injuries. In our view, Stanley's trial attorney made a reasonable strategic decision to attack the sufficiency of these injuries by establishing, in his cross-examination of the State's medical witnesses, that the injuries required no treatment at the hospital, no overnight stay at the hospital, and no prescribed treatment. The report by the emergency medical technicians who had taken Coates to the hospital would not have added much to this evidence, and it would have required calling at least one of the attesting emergency medical technicians as a witness for the defense, to establish the report. The likelihood is that this person, like all the other witnesses who saw Coates that night, would have told the jury how horrible the injuries appeared. This additional testimonial to the severity of Coates' injuries, coming from a witness called by Stanley, would not have been helpful.
Stanley also asserts that his trial attorney should have established a discrepancy between the report of the EMT's, which indicated that the victim was immobilized on a board, and the testimony of the admitting nurse, who testified that the victim was in a fetal position. In our view, this discrepancy is de minimis, and would not have been worth the risk, already alluded to, of calling one of the emergency medical technicians in Stanley's case to authenticate their report.
Another argument that Stanley makes in support of this ground for relief is that his trial counsel was ineffective in not having cross-examined Dr. Carter, the emergency room physician who examined the victim, concerning his summary. This summary was also somewhat helpful from Stanley's point of view, in that it tended to minimize the injuries. It also included the statement that "she [the victim] denies any loss of consciousness," which tends to contradict Coates's own testimony that she lost consciousness several times during the assault.
In our view, trial counsel was not ineffective in making the strategic decision not to cross-examine Dr. Carter from his summary. Trial counsel was successful in establishing, in Dr. Carter's cross-examination, that the injuries did not require any follow-up treatment or extended hospitalization. In our experience in trying cases, it is seldom a good idea, in cross-examining a medical expert, to try to bolster favorable testimony by referring to the doctor's notes, unless those notes are crystal clear in their import. All too often, the effort to do so results in the doctor explaining, to the jury's complete satisfaction, that the apparently favorable comment in the notes is not favorable at all.
We conclude that Stanley's petition fails to show, even if its factual premises are credited in full, that his trial counsel was ineffective in dealing with the severity of Coates's injuries. In our view, counsel did the best he could to downplay the seriousness of the injuries. Even if they were not as severe as they appeared in the photographs, and to those people who saw Coates shortly after she was assaulted, it is clear that they caused her severe pain, and it appears undisputed that they resulted in her being out of work for a week. Either of these facts would satisfy the statutory definition of a serious physical injury.
 B
Stanley's next ground for relief, in his amended petition, is that his trial counsel failed to subpoena certain witnesses, as instructed by Stanley. Stanley has submitted affidavits from these prospective witnesses. We note that one of them, the Reverend Terry Hall, was, in fact, called as a witness. However, the trial court, in a voir dire hearing out of the presence of the jury, determined that he was not competent to offer the opinion for which he was offered by the defense.
We have examined the affidavits of the other prospective witnesses, and we conclude that, at most, they may have tended to corroborate Stanley's testimony that his girlfriend had been unfaithful to him, and that his discovery, from her, that she had been unfaithful, was provocation that should have entitled him to a jury instruction concerning the lesser-included offense of Aggravated Assault. Coates, who testified, denied that she had been unfaithful to Stanley.
Stanley had requested a jury instruction on Aggravated Assault, but the trial judge denied the request, upon the ground, among other, unstated grounds, that Stanley had failed to establish that his victim had, in fact, been unfaithful to him, noting that the provocation required to mitigate an offense from Felonious Assault to Aggravated Assault has to be "occasioned by the victim."
We conclude that none of this evidence would have been material. The provocation required to mitigate an offense of Felonious Assault to Aggravated Assault is identical to the provocation required to mitigate an offense of Murder to one of Voluntary Manslaughter. R.C. 2903.03(A) and 2903.12(A). In State v. Shane (1992), 63 Ohio St.3d 630, in upholding the denial of a requested instruction on Voluntary Manslaughter, it was held that a fiancee's admission of her infidelity does not constitute sufficient provocation to incite the use of deadly force. The Supreme Court seemed to leave open the possibility that the actual discovery of one's lover in the act of being unfaithful might constitute sufficient provocation to incite the use of deadly force. However, nothing like that occurred in the case before us. At most, Stanley might have been able to establish that Coates had been unfaithful to him, and that he had discovered this infidelity, either from Coates, or from others, or from the combination thereof, at the time he assaulted Coates. In view of the holding in State v. Shane, supra, however, these facts, even if they had been established, would not have constituted sufficient provocation, and would therefore not have justified an instruction on Aggravated Assault.
 C
Stanley's third and fourth claims for post-conviction relief relate to his claim that his prosecution for Attempted Murder was vindictive, because he was indicted for Attempted Murder only after he had declined a plea bargain offer by the State. Stanley claims that his trial counsel was ineffective for having failed to raise this issue at his trial. Stanley cites Thigpen v. Roberts (1984), 468 U.S. 27, 104 S.Ct. 2916,82 L.Ed.2d 23. In that case, however, when a defendant exercised his right, following a conviction, to cause a trial de novo on the charge, he was met with re-indictment on more serious charges. In our view, that is distinguishable. In the case before us, Stanley had no right to a plea bargain, and the prosecutor could condition not seeking a greater indictment, for which there was probable cause, upon an agreement to a plea bargain proposed by the State. Furthermore, the existence of probable cause for the increased charge is presumed from the fact that a grand jury has returned an indictment on that charge. State v. Owens (April 21, 2000), Mont. App. No. 17522, unreported.
 D
Stanley's final claim for post-conviction relief is based upon his trial counsel's having failed to object to inflammatory comments made by the prosecutor during closing argument. This claim is clearly barred by the doctrine of res judicata. If it is valid, it can be demonstrated from the record. Therefore, it could, and should, have been the subject of Stanley's direct appeal. Furthermore, it was. In our decision rendered in Stanley's direct appeal on November 12, 1999, we addressed his contention that his trial counsel was ineffective for having "failed to object in name-calling and other prosecutorial misconduct." Although we found some aspects of the prosecutor's closing argument to be "troubling," we found that there was no reasonable probability of a different outcome in the case, if Stanley's defense counsel had objected to the prosecutor's improper comments. We also found that the jury's acquittal of Stanley on the Attempted Murder charge suggested that the jury was not inflamed as a result of the prosecutor's closing argument. Id., at 6.
 E
We conclude that even if all of Stanley's factual allegations in support of his amended petition for post-conviction relief are credited in full, he has failed to establish a violation of his constitutional rights that would entitle him to relief. Consequently, Stanley's Second, Third, and Fourth Assignments of Error are overruled.
 IV
All of Stanley's assignments of error having been overruled, the judgment of the trial court is Affirmed.
 ________ FAIN, J.
BROGAN and YOUNG, JJ., concur.