

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. PD-0526-25

**THE STATE OF TEXAS**

**v.**

**MARTIN YOUNG, Appellee**

---

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTH COURT OF APPEALS GUADALUPE COUNTY

---

**SCHENCK, P.J., filed a concurring and dissenting opinion in which**

**WALKER, J., joined.**

### CONCURRING AND DISSENTING OPINION

I join the opinion of the Court in holding that the court of appeals erred by

concluding the State forfeited its consensual-encounter argument on appeal. But

the Court's decision to remand to the court of appeals, in my view, serves only to further delay justice by unnecessarily prolonging this litigation. I would instead address the merits in this and like cases on interlocutory appeal and thus dissent from the majority's contrary disposition.

I write separately to explain two main points of disagreement. First, the majority repeats a position that has been taken regularly without apparent regard to constitutional and statutory discrepancies with its application. Namely, that this Court has "limited" discretionary review power and that we may "only review 'decisions.'" Maj. Op. at 17–18. The majority does not explain what it understands the "decision" to be, neither how (or why) we would ever exercise our discretionary review authority to compel piecemeal resolution of appeals. Second, regardless of our understanding of the operative appellate vocabulary and past precedent compelling our apparent default stance toward remands unless the proper judgment is "clear," the majority does not explain how this rule should operate when reviewing interlocutory appeals that are supposed to be "expedited."

## I. THE TEXAS CONSTITUTION AND APPLICABLE STATUTES PERMIT—INDEED FAVOR—PROMPT PLENARY REVIEW AND MERITS DISPOSITIONS OF "APPEALS" FROM "DECISIONS"

As the majority correctly recognizes, this Court's current precedent defaults toward remand of issues or arguments not reached by the court of appeals opinion,

although that same precedent permits us to undertake review under a supposed "exception." *Gilley v. State*, 418 S.W.3d 114, 119 (Tex. Crim. App. 2014); *Davison v. State*, 405 S.W.3d 682, 691–92 (Tex. Crim. App. 2013). I believe that framework is rooted in a flawed understanding of our powers under Article V of the Texas Constitution and our obligations under the governing rules and statutes.[1] Put directly, our review of "decisions" is a review of the lower court's disposition and judgment, not of the particulars of any opinion or opinions they issue, and we should stop indicating otherwise.

This case therefore presents an opportunity to address whether our current framework is appropriate at all, and whether, regardless of how we choose to describe it, we should be routinely remanding in cases involving interlocutory appeals. As explained below, I would first hold, explicitly, that our existing framework as laid out in opinions of the Court giving rise to such an "exception" reflects an erroneous understanding of the Court's judicial power under the Texas Constitution and the settled meaning of the word "decision." Second, I would conclude that remand should not be the default rule when we exercise statutory authority to review lower court "decisions" involving interlocutory orders.

---

[1] *See* TEX. CODE CRIM. PROC. art. 44.45(b) ("The Court of Criminal Appeals may review decisions of the court of appeals . . . ."); *id.* art. 44.01(a)(5), (e)–(f) (authorizing interlocutory appeal of trial court suppression ruling, stay of trial pending appeal, and requiring court of appeals to give precedence to disposition of the appeal).

### A.   Our Current Precedent Advances Either a Misreading of Our Review Powers Under the Texas Constitution and Governing Statutes or a Misapplication of Our Obligation to Decide Cases We Accept for Discretionary Review

The majority opinion fairly describes our existing remand practice and anchors it in a series of decisions applying Texas Rules of Appellate Procedure 66.3 for determining *whether* to undertake discretionary review of a "decision" in the first instance.  Maj. Op. at 18–19.[2]  The incongruity of that reliance to the actual question of how a case is disposed seems obvious.  It appears to stem from the path our rule governing remand has taken.

Starting with *Lee v. State*, this Court operated under a general understanding that our ability to review *or* dispose of a case was limited by our Constitution and statutes to "decisions" of the lower courts.  791 S.W.2d 141, 142 (Tex. Crim. App. 1990).  As we observed there, "[i]n our discretionary review capacity we review 'decisions' of the courts of appeals."  *Id.* (citing TEX. CONST. art. V, § 5; TEX. CODE CRIM. PROC. art. 44.45).  As a textual, statutory matter, there is no concern

---

[2] As explained below, our discretionary review power was not born from the appellate rules—it is rooted in Article V, Section 5 of the Texas Constitution.  *See* TEX. CONST. art. V.  Accordingly, Rule 66.3 is "neither controlling nor fully measuring" this Court's discretion to accept review nor relevant to our obligation to decide a case once we have accepted review.  TEX. R. APP. PROC. 66.3.

with this formulation.[3]  The problem is with its failure to consider the meaning of the word "decision."  It improperly treats the "decision" as the "opinion" below and thus as embracing only the issues or arguments included in the latter. As a result, if the opinion did not reach and dispose of an *argument* or issue there was no "decision" to review.  Through this reading, *Lee* would find a ripeness problem with this Court reaching any issue or argument not reached by the opinion, despite the ultimate disposition below.  *Id.*; *see also Stringer v. State*, 241 S.W.3d 52, 59 (Tex. Crim. App. 2007) ("[T]he State's alternative arguments are not ripe for our review.").

This "opinion-as-decision" ripeness process continued, though the Court began recognizing an "exception" to that rule—the same one observed by the majority here—by which we may proceed where the resolution is in the "interest of judicial economy" or where the answer to the unreached issue or argument is "clear."  *Johnston v. State*, 145 S.W.3d 215, 224 (Tex. Crim. App. 2004); *Gilley*, 418 S.W.3d at 119; *see also Alonzo v. State*, 158 S.W.3d 515, 515–18 (Tex. Crim. App. 2005) (Keller, J., dissenting) (urging recognition of duty of appellate court to raise

---

[3] Article V, Section 5 of the Constitution confers on this Court "final appellate jurisdiction coextensive with the limits of the state" and later provides "[i]n addition, the Court of Criminal Appeals may, on its own motion, review *a decision* of a Court of Appeals . . . ."  TEX. CONST. art. V, § 5 (emphasis added).  For reasons that will become obvious I do not believe parsing of this text is necessary once the meaning of the word "decision" is considered.

preservation *sua sponte* and after panel decision in court of appeals); *but see Rhodes v. State*, 240 S.W.3d 882, 893 (Tex. Crim. App. 2007) (Price, J., dissenting) ("[W]e do not address the merits ourselves unless the issue is brought back to us after remand.").

I assume from these various and sporadic recognitions of our authority to decide things that are "clear" or in the "interest of judicial economy" despite the failure of the court of appeals to do so first, that we have recognized (albeit silently) that there is no constitutional or jurisdictional ripeness barrier to deciding cases where we have exercised our discretionary review authority. As we exercise no power to amend the Constitution or plow through any ripeness barrier it or any statute might impose, it would be difficult to explain otherwise.[4] Instead, the Court and its members appear to operate on an assumption that our authority to decide is generally constrained by the court of appeals's "opinion"—or at least a concomitant assumption that our decision to accept review is presumably subject to the same limits.

---

[4] This Court has continually applied this framework despite the initial constitutional and ripeness concerns. *Sotelo v. State*, 913 S.W.2d 507, 509 (Tex. Crim. App. 1995); *Cooper v. State*, 933 S.W.2d 495, 496 (Tex. Crim. App. 1996) (per curiam); *State v. Terrazas*, 962 S.W.2d 38, 42 (Tex. Crim. App. 1998) (en banc) (Price, J., authoring the opinion); *Stringer v. State*, 241 S.W.3d 52, 59 (Tex. Crim. App. 2007); *Sledge v. State*, 666 S.W.3d 592, 599 (Tex. Crim. App. 2023).

### B.     An Appellate "Decision" is Not Synonymous With an "Opinion"

*Lee* and our cases following it appear to be driven by the assumption that the words "decision" as used in the Constitution, and the statutes creating and defining our appellate jurisdiction and the relevant rules, target the reasons and rationales given in the lower courts as an explanation for its disposition.  This form of review existed once under English common law in the form of the writ of error.  By this system, a party was obliged to "assign error" below and initiate a new case in a higher court focused on the errors so "assigned."  Edson Sunderland, *Improvement of Appellate Procedure*, 26 IOWA L. REV. 3, 9 (1940).  By the beginning of the 1700s, a separate appellate system governed equity proceedings by which the case was removed to a higher court with the authority to make corrections or remand.  Thomas W. Powell, THE LAW OF APPELLATE PROCEEDINGS, IN RELATION TO REVIEW, ERROR, APPEAL AND OTHER RELIEFS UPON FINAL JUDGMENT 43 (1872).

In this country, and in Texas in particular, we long ago adopted the appellate review system and appellate rules that have a well-developed understanding of "decisions" and how they are reviewed.  We resolved that appellate courts review "judgments, not opinions."  *See Jennings v. Stephens*, 574 U.S. 271, 277 (2015) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)); Coale & Taylor, *Judgment Rendition in Texas*, 75 BAYLOR L. REV. 354, 364

(2023).

This understanding was recognized long before the ratification of our Constitution in 1876, the enactment of any statute[5] governing our review of final judgments or interlocutory orders, or our adoption of the rules of appellate procedure in 1986.

If this rule were not in place, we could not affirm a judgment for any reason other than the one offered in the opinion and urged to us by a petitioner or cross-petition. And yet, as early as 1827, Chief Justice Marshall noted "[i]f the judgment should be correct, although the reasoning, by which the mind of the Judge was conducted to it, should be deemed unsound, that judgment would certainly be affirmed in the superior Court." *Williams v. Norris*, 25 U.S. 117, 120 (1827); *Thigpen v. Roberts*, 468 U.S. 27, 29–30 (1984) ("Although the court below . . . addressed only the double jeopardy issue, we may affirm on any ground that the law and the record permit . . . ."). The "judgments, not opinions," rule came to be acknowledged essentially universally long ago, and certainly well before our governing statutes were enacted. Jeffery Anderson, *Right for Any Reason*, 44 CARDOZO L. REV. 1015, 1027, 1033 n.109, 1039 n.150 (2023).

---

[5] For an excellent summary of the history of the statutory appeal right see Kevin Yeary, *Appeals from Pleas of Nolo Contendere: History and Procedural Considerations,* 33 ST. MARY'S L. J. 405, 407–08 (2001).

For or over one hundred years, the United States Supreme Court has acknowledged the longstanding principle that "'[t]he court's decision of a case is its judgment thereon,' while the court's opinion is merely 'a statement of reasons on which the judgment rests.'" *Id.* (citing *Rogers v. Hill*, 289 U.S. 582, 587 (1933)); *see McClung v. Silliman*, 19 U.S. 598, 603 (1821). Likewise, Texas law predating our current framework on the matter recognized that a "decision" is the disposition or judgment, *not* the opinion:

> Likewise, an opinion may be distinguished from a decision. The former sets forth the detailed reasons and law as applied to the case upon which the judgment is based . . . ; the latter is the judgments or legal conclusion reached by the ruling body, *Kidd v. McCracken*, 105 Tex. 383, 150 S.W. 885 (1912).

Tex. Att'y Gen. Op. No. C-502 (1965). Our own appellate rules provide clear demarcation between an opinion, decision, and judgment: Rule 77.1 provides that this Court "will hand down a written *opinion* setting forth the reasons for its *decision* and any germane precedent and . . . [a]ny judge may file an *opinion* dissenting or concurring in the Court's *judgment*." TEX. R. APP. PROC. 77.1 (emphasis added).

Justice Calvert gave a direct admonishment to this effect more than a decade before the adoption of the current rules of appellate procedure. "The word 'decision' as found in statutes and rules is sometimes held to mean 'judgment,'" but "*the 'opinion' of an appellate court is not at all the legal equivalent of its decisions or*

*judgment.*" Robert Calvert, *Appellate Court Judgments or Strange Things Happen on the way to Judgment,* 6 TEXAS TECH L. REV. 915, 920–21 (1975) (emphasis added).

The current rules governing the "decision" in the court of appeals make this plain throughout. For example, unless a case is assigned for *en banc* disposition at the outset, the concurrence of two justices *in the judgment* determines the result. TEX. R. APP. P. 41.1 ("Decision by Panel"). The same is true for an opinion from the court sitting *en banc*. *Id.* R. 41.2 ("Decision by En Banc Court") ("A majority of the en banc court must agree on a judgment."). Whether the justices agree on a rationale is irrelevant. And, whatever rationales they commit to paper in the form of the "opinion," do not constrain the effect of the judgment going forward as among the parties or the higher court reviewing the "decision" or "judgment." This is the essence of *res judicata* and corollary doctrines of preclusion and procedural default and what distinguish them from collateral estoppel.

If all issues and arguments fairly within the reach of the proceedings are resolved by the lower court's judgment—and they plainly are—they are all fairly within our reach (and the parties') on direct review of the judgment regardless of whether the court of appeals plowed through them separately and seriatim. *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) ("We do not consider *issues* that were not raised in the courts below, but parties are free to

construct new *arguments* in support of issues properly before the Court.”); *see also*

*Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982) (avoiding remand where the

record and governing law made only one judgment proper).

This Court, however, has not, in my opinion, satisfactorily explained its

understanding of the word “decision”[6] as it appears to drive our own

understanding of the exercise of jurisdiction.  I believe it is time to do so and to

bring ourselves and our practices in line with the Rules of Appellate Procedure and

their stated preference for rendition wherever possible, especially where the appeal

is interlocutory and *supposedly* expedited.  *See* TEX. R. APP. P. 43.3 (directing

intermediate courts to render unless remand is necessary); TEX. CODE CRIM. PROC.

art. 44.01(f).

## II.   REMAND SHOULD NOT BE THE DEFAULT DISPOSITION AND INTERLOCUTORY APPEALS SHOULD GENERALLY WARRANT PROMPT, FINAL DISPOSITION ON THE MERITS

Regardless of our past practices, remand should not be the default rule where

we are permitted by the Constitution to answer the merits questions ourselves.

Nevertheless, it has become the practice of this Court to remand cases essentially

as a matter of course wherever the lower court’s opinion has not reached a question

---

[6] This Court has not uniformly agreed on what constitutes a “decision,” and the need to do so is evinced by our predecessors’ recognition of the matter. *See Hughen v. State*, 297 S.W.3d 330, 335–36 (Tex. Crim. App. 2009) (Price, J., dissenting) (“We have not always been able to agree on what constitutes a ‘decision’ of the court of appeals.”).

that would permit its final disposition. *See Gilley*, 418 S.W.3d at 119; *Davison*, 405 S.W.3d at 691. While I disagree with this impulse as a general matter for reasons I have already discussed, this practice should not reach to interlocutory appeals.

### A. We Should Consider Our Remand Practices in All Interlocutory Appeals

Notably, none of the cases the majority relies upon for its remand disposition here involve an interlocutory appeal, and this Court has not carefully considered that framework in the context of *interlocutory appeals* such as the one at bar.[7] Any deliberation of remand in cases with this procedural posture should take into consideration that the appeal will typically result in the stay of the trial pending final resolution of the appellate process. *See* TEX. CODE CRIM. PROC. ANN. 44.01(e).

In cases such as this, one of two things is invariably true. Either the defendant (as to whom there is probable cause of criminality) has been released on bond, posing concomitant risk to the public, or (despite the presumption of innocence) he is sitting in jail awaiting trial. While we might also continue to

---

[7] *Gilley* and *Davison* were not interlocutory appeals. *See Gilley*, 418 S.W.3d at 116; *Davison*, 405 S.W.3d at 684–85. Precedent on our discretionary review power in this context has been decided almost exclusively on final judgments. *See Sledge v. State*, 666 S.W.3d 592, 594 (Tex. Crim. App. 2023); *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020); *cf. Martin v. State*, 620 S.W.3d 749, 754 (Tex. Crim. App. 2021) (declining to remand in case before us on interlocutory appeal).

remand these cases to the intermediate courts of appeals (who I strongly suspect to have little interest in revisiting them), the public, and the parties suffer alike.

As a result, routinely subjecting these cases to prolonged proceedings would be a bad habit and reflects an absence of stewardship. Our appellate rules promote rendering judgment in all cases "promptly." *See* TEX. R. APP. PROC. 43.1.[8] We should be particularly mindful of that admonition when the pendency of the appeal is obstructing finality.

Even if we are to hold to our existing practice of remanding unless the lingering question is "clear" it is difficult to see how interlocutory appeals presenting a single issue—like whether evidence is properly suppressed—will not fit within that rubric given the standard of review.

First, acting to resolve purely legal questions that we would review *de novo* presents no possible prejudice to the litigants. *See Hudson United Bank v. LiTenda Mortg. Corp.*, 142 F.3d 151, 159 (3d Cir. 1998); *Wetherbe v. Tex. Tech Univ. Sys.*, 699 Fed. Appx. 297, 301 (5th Cir. 2017). Indeed, we have recognized this principle in ourselves though we cabin it in terms of "clearness." *Gilley*, 418 S.W.3d at 119.

---

[8] The majority author opines on the prospect of delay *in this Court* as a rationale for remand. Maj. Op. at 22. While I obviously have shared her concerns with our existing operations, a majority of the Court does not support material revisions to them at present. And, regardless of these concerns, the prospect of *multiplying* proceedings below, and here, does not advance any cause of efficiency.

Given the proliferation of "legal" as opposed to factual questions in these matters, I believe we should presume the former are, by definition, clear enough for a competent appellate court to answer. *Norfolk Southern Ry. Co. v. Basell U.S.A., Inc.*, 512 F.3d 86, 97 (3d Cir. 2008) (holding when the factual record is developed and the issues are purely legal an appellate court can exercise plenary review).

Second, even where factual issues present themselves, our near total deference to the trial court's findings of historical facts leaves only the navigation of mixed questions of fact and law to be navigated. *E.g.*, *State v. Lujan*, 634 S.W.3d 862 (Tex. Crim. App. 2021). While that task may not always be "clear," the lower court is no more equipped than us to answer it.

And whether these questions are ultimately "clear" or not, a decision that simply revises our default posture in this and other interlocutory appeals would surely aid efficiency generally and preclude the continual prospect of cases like *State v. Copeland*, No. 13-11-00701-CR, 2015 WL 7039545, at *3 (Tex. App.— Corpus Christi, Feb. 24, 2016) (not designated for publication). That case produced *Copeland I*, *II*, and *III* in this Court, where the final resolution of the appeal(s) of an October 24, 2011 suppression ruling finally came into fruition through our final opinion delivered on October 12, 2016. This should not be possible.

### B.     *Remand is not Necessary in This Case*

Finally, regardless of my concerns over our existing framework, applying it here neither supports nor requires a remand.  This case awaits disposition of a motion to suppress that the trial court granted *almost two years ago* on June 12, 2024.  Appellee, Martin Young, was charged by information with driving while intoxicated, a Class A misdemeanor.  This case has meandered from the trial court, through the court of appeals, then to this Court, and now, apparently, back to the court of appeals. What'll happen after that? Who knows—maybe Appellee or the State will file a petition for discretionary review, and the case will come back up to this Court.

The only remaining question here is whether the law supports the trial court's ruling that the seizure was unsupported by the consensual-encounter justification advanced by the State.  Our precedent on that question is straightforward, the issue has been fully briefed before us, and the record is (and will remain, remand or not) closed.  In my view, the proper disposition is clear: address the merits and affirm.  To wit, our opinion could look like this:

> Officer Andrew Cavazos responded to an anonymous 911 caller's welfare concern and located a vehicle of similar description. He observed Appellant sitting in the driver's seat and parked in a restaurant parking lot.  Officer Cavazos then parked his patrol vehicle behind Appellant's vehicle, blocking Appellant's egress.  He approached Appellant, wearing his uniform, badge, and gun.  Officer Cavazos asked Appellant if he was okay.  When Appellant

said yes, Officer Cazazos immediately ordered him to exit the blocked vehicle and began a DWI investigation. Officer Cavazos testified that he did not observe any signs of intoxication before ordering Appellant to exit his vehicle. Viewing the totality of the circumstances, the interaction here amounted to an investigative detention, not a consensual encounter. Thus, the trial court's ruling was correct. *See Monjaras v. State*, 664 S.W.3d 921, 926 (Tex. Crim. App. 2022) (citing *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)); *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016); *Madden v. State*, 242 S.W.3d 504, 517 (Tex.Crim.App.2007); *State v. Castleberry*, 332 S.W.3d 460, 467 (Tex. Crim. App. 2011).

## CONCLUSION

While I concur in the Court's forfeiture holding, I dissent to its disposition.

Filed: May 14, 2026

Publish