In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-2227

MARVIN SIMELTON,

*Petitioner-Appellant,*

*v.*

MATTHEW J. FRANK,

*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03 C 145—**Patricia J. Gorence**, *Magistrate Judge.*

---

ARGUED DECEMBER 8, 2005—DECIDED MAY 1, 2006

---

Before BAUER, POSNER, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Marvin Simelton pled guilty to two charges of sexual assault. After unsuccessfully pursuing his state court remedies, he filed a petition for a writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2254. In a thorough opinion, the magistrate judge denied the writ. Simelton presents us with a single issue for review: whether his guilty plea was entered into knowingly, intelligently and voluntarily. We affirm.

## I. HISTORY

Simelton was initially charged by the State of Wisconsin with one count of kidnaping and three counts of sexual

assault after he pushed a woman into an alley and sexually assaulted her in January 1999. Included in the initial charges was a penalty enhancer for habitual criminality. A plea deal was negotiated where the penalty enhancer, the kidnaping charge, and one charge of sexual assault were to be dismissed in exchange for Simelton's plea of guilty to two charges of sexual assault.

A hearing was held in the Milwaukee County Circuit Court in April 1999 where Simelton was to plead guilty. Prior to coming out of the "bullpen" (where prisoners are held while awaiting a court appearance), Simelton apparently had cold feet and indicated to his counsel that he wanted a new lawyer to take a fresh look at his plea deal. But he again changed his mind after coming into court and indicated that he wanted to proceed. The judge inquired into the issue, and Simelton told the judge, referring to his attorney, "I'd like to keep her on my case." To be sure, the judge asked some follow-up questions and passed the case to give Simelton more time to think and talk it over with his lawyer.

When the case was called again, Simelton was ready to keep his lawyer and go forward with the plea. The type of plea immediately became an issue, because Simelton indicated that he wanted to take an "Alford plea," which allows the defendant to plead guilty while maintaining his innocence. *See North Carolina v. Alford*, 400 U.S. 25 (1970). His attorney quickly corrected him though by reminding him that the issue of an *Alford* plea had been discussed with the prosecutor who had been clear that such a plea would not suffice. After this exchange, Simelton, responding to his attorney's questions, confirmed his desire to enter a guilty plea—as opposed to an *Alford* plea—and that he did not want another attorney to review his case.

After comments by the prosecutor, the judge began questioning Simelton. The judge first solicited some background, including asking Simelton whether he had "a high

school education plus two years beyond high school," to which Simelton responded, "Yes." As the Wisconsin Court of Appeals later explained, the two years beyond high school referenced by the judge were classes in plumbing and custodial work taken in prison, and, according to Simelton, he never really graduated from high school.

The judge moved on to reviewing the constitutional rights Simelton would be giving up by pleading guilty, and queried the voluntariness of his decision. The judge then asked Simelton about the two counts of sexual assault to which he was pleading guilty. Specifically, as to the elements of the first count, the colloquy was as follows:

> THE COURT: And do you understand that the State would have to prove at trial that on that date and at that location you did have sexual intercourse, penis to mouth, with [the victim], without her consent by threat of force; do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you have any question about what that crime is?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Pardon me?
>
> THE DEFENDANT: Yes, I understand.
>
> THE COURT: Okay. You understand the elements of the offense?
>
> THE DEFENDANT: Yes, ma'am.

The discussion was similar as to the second count of sexual assault to which Simelton was pleading guilty:

> THE COURT: And you understand that the State would also have to prove that on that date and at that location, you did have sexual intercourse, penis to vagina, with [the victim] without her consent by

threat or force—threat of force or violence; do you understand that?

THE DEFENDANT: Yes, ma'am.

The judge then discussed the possible sentences with Simelton, making sure he understood that the prosecutor would recommend "substantial" prison time, and that it was possible he would be sentenced to the maximum sentences for each count, which "could run one after another . . . so it could be a total of forty years." The hearing concluded with the judge accepting Simelton's plea of guilty to the two counts of sexual assault.

In May 1999, Simelton was sentenced. During the hearing Simelton requested certain clarifications to his presentence report. He disputed that he received any gratification from the sexual assaults he pled guilty to, and also attempted to explain in more detail his culpability for two of his previous convictions. As to a previous battery conviction, he provided reasons for why he had become involved in an altercation with a security guard. And with regard to a previous conviction for reckless homicide, Simelton wanted the judge to know that the victim was only stabbed as a result of a struggle where Simelton and the victim rolled over on the floor and that Simelton "did not actually stab the victim."[1]

Simelton also attempted to minimize his culpability for the sexual assault. He apologized for "any harm" to the victim and said that he "made a bad decision on that day." Simelton also (contradicting his plea) refused to admit guilt: "I'm not saying that—that I'm in the wrong." He summed up his thoughts on the incident as follows:

When I met [the victim], she stopped me, and then I made a bad judgment . . . we end up doing

---

[1] In response to this last clarification, the judge astutely queried: "Did [the victim] roll over on the knife four times?"

> something both had no business doing, so I paid the consequences of it with my action, and I hope the Court can forgive me, and I feel very, very sorry for whatever happened, and I hate to see that a person have to go through—go through this type of trauma
> . . . .

In considering Simelton's criminal background, which included previous convictions for fourth degree sexual assault and aforementioned retail theft, battery, and first degree reckless homicide convictions, the judge noted that Simelton consistently attempted to posit incredible explanations for his criminal conduct. Reaching the conclusion that a substantial prison sentence was necessary, the judge sentenced Simelton to two terms of fifteen years' imprisonment, to run consecutively.

Simelton requested review in the Wisconsin Court of Appeals, but his attorney, seeing no merit in the appeal, opted to file an *Anders* brief. *See Anders v. California*, 386 U.S. 738 (1967). Simelton proceeded pro se. His brief and the *Anders* brief raised the issue of whether his guilty plea was entered into knowingly, intelligently and voluntarily. The Wisconsin Court of Appeals explained that the trial court properly followed the procedures set out in *State v. Bangert*, 389 N.W.2d 12 (Wis. 1986) in taking the guilty plea and dismissed Simelton's other bases for arguing that his plea was improper. The Wisconsin Supreme Court denied Simelton's request for review.

## II. ANALYSIS

Simelton's claim is governed by 28 U.S.C. § 2254(d), which provides for relief only if the state court decision was either contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). We review the decision of the last state court to rule on the

merits of petitioner's claim, *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citation omitted), which in this case is the decision of the Wisconsin Court of Appeals. The magistrate judge's findings of fact are reviewed for clear error and the legal conclusions de novo. *Richardson v. Briley*, 401 F.3d 794, 799 (7th Cir. 2005) (citations omitted).

A decision is "contrary to" federal law when the state court applies a rule that "contradicts the governing law set forth by the Supreme Court," or when an issue before the state court "involves a set of facts materially indistinguishable from a Supreme Court case," but the state court rules in a different way. *Boss v. Pierce*, 263 F.3d 734, 739 (7th Cir. 2001) (citing *Williams*, 529 U.S. at 405-06). "'A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular petitioner's case' qualifies as a decision involving an unreasonable application of clearly established federal law." *Id.* (quoting *Williams*, 529 U.S. at 407-08). An "unreasonable application" of law, while not easy to define in the abstract, is at least worse than a merely incorrect decision. *Id.*

Simelton argues that the proceedings in state court resulted in a decision contrary to clearly established federal law as determined by the Supreme Court. However, Simelton does not take issue with any legal pronouncement made by the Wisconsin Court of Appeals when it denied his claim for habeas relief, and he also has no quibble with *Bangert*, the case upon which the Wisconsin Court of Appeals relied to reject Simelton's claim. Nor does Simelton argue that his case involves facts materially indistinguishable from a Supreme Court case.

Instead, Simelton's argument is that the Wisconsin Court of Appeals was wrong to determine that the record supported a finding that his plea was made voluntarily, knowingly and intelligently as required by federal law. This argument concerns the application of law, and, as such,

relief can only be granted to Simelton if we determine that the decision of the Wisconsin Court of Appeals was unreasonable, which, as we explain, it is not. *See Boss*, 263 F.3d at 739.

The heart of Simelton's request for relief is that when he pled guilty to the two counts of sexual assault he allegedly did not understand that the victim's lack of consent was an element of the crime. As proof of this assertion he directs us to his comments at his sentencing hearing (occurring about a month after the entry of his guilty plea) where he refused to say "that I'm in the wrong," and seemed to infer consent on the part of the victim.

The obvious problem with this contention is that when Simelton pled guilty the trial judge asked him whether he "[understood] that the State would have to prove at trial that . . . you did have sexual intercourse . . . with [the victim], *without her consent* by threat of force" (emphasis added), and Simelton responded that he did understand. We cannot find it unreasonable for the Wisconsin Court of Appeals to hold Simelton to the admissions made at his guilty plea notwithstanding his later attempt to mitigate culpability at sentencing. Our cases, in fact, routinely hold that admissions of criminal conduct made during a guilty plea are taken seriously and presumed to be true, e.g., *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir. 2002) (citations omitted), and that bare protestations of innocence made after the formal entry of a guilty plea are insufficient to render a plea invalid, *United States v. Carroll*, 412 F.3d 787, 792 (7th Cir. 2005).

Any confusion as to Simelton's precise education level will also not invalidate the plea. As to this issue, the Wisconsin Court of Appeals reasonably explained that while "Simelton's education level is significant to the extent that it reflects on his ability to understand the elements of the offense, the maximum penalties and the constitutional

rights he waived," neither Simelton nor an independent review of the record shows "any impairment in [his] ability to understand those matters." Furthermore, Simelton's initial erroneous request for an *Alford* plea, which was quickly corrected by his counsel, fares no better. "The voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970) (citations omitted). Our review of the record leads to the conclusion that the Wisconsin Court of Appeals reasonably held Simelton's guilty plea was entered into knowingly, voluntarily and intelligently as required by clearly established federal law.

Finally, we note that the driving force behind this petition appears to be Simelton's surprise at receiving a thirty-year prison sentence. Simelton is no stranger to the criminal justice system. In fact, he has a self-described "checkered history with the law." His previous convictions include fourth degree sexual assault, retail theft, battery, and a first degree reckless homicide conviction where, according to Simelton, his only involvement was holding the knife that the victim inadvertently used to kill himself by rolling over on it. It is a fair inference from the record that instead of forcing the state to trial on these previous convictions, Simelton opted to play ball in the hopes of receiving palatable punishment. It worked out well for him, as he explained in his pro se brief to the Wisconsin Court of Appeals, because he has had (until now) "what one would call . . . overall fair and some would say lenient experiences" with the criminal justice system of the State of Wisconsin, which always led to what Simelton described as a "positive outcome." Apparently the thirty years' imprisonment given in this case—10 years less than the maximum—was not quite the "positive outcome" Simelton expected. But it is not an unreasonable application of clearly established federal law to say that underestimating the severity of the sentence

to be imposed has no effect on an otherwise valid guilty plea. *See, e.g., United States v. Knorr*, 942 F.2d 1217, 1220 (7th Cir. 1991) (citation omitted).

## III. CONCLUSION

For the foregoing reasons, the judgment is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*