UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 6, 2006
Decided August 24, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

Nos. 05-1316, 05-1693 & 05-2884

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeals from the United States |
| *Plaintiff-Appellee*, | District Court for the Northern |
| | District of Illinois, Eastern Division. |
| *v.* | |
| | No. 03 CR 621 |
| LEONARD CLARK, JUAN CRUZ, and | |
| JOSE OLAQUEZ, | Amy J. St. Eve, |
| *Defendants-Appellants*. | *Judge*. |

**O R D E R**

Leonard Clark, Juan Cruz, and Jose Olaquez, along with six other members of a Chicago street gang called the West Town Latin Kings, were indicted for conspiracy to distribute and to possess with intent to distribute more than fifty grams of crack cocaine (among other offenses unimportant to this appeal). All three pleaded guilty. Judge St. Eve sentenced Clark and Cruz to 360 months for their roles in the conspiracy and Olaquez to 210 months for his role. All three appeal their sentences on the grounds that Judge St. Eve miscalculated the amount of drugs attributable to each. Olaquez also challenges the judge's finding that the drug was crack.

## I. Background

The conspiracy lasted from 1998 through 2003, but we are concerned only with a short window between February 2001 and July 2001 when Clark and Cruz led the conspiracy and Olaquez participated. Clark was in charge, he held the title of "Inca," and Cruz was his second-in-command, with the title "Cacique." The gang sold crack on a daily basis during this stretch—at least fifteen members selling regularly—and held meetings to discuss sales and security. Clark and Cruz led the meetings. Every so often members of the gang sold "Nation Packs," baggies with ten rocks of crack, and the proceeds went to the gang. Codefendant Angel Serrano admitted his involvement in selling more than 1.5 kilograms of crack during the time Clark and Cruz were in charge. During the same time, codefendant David Saez dealt between 500 grams and 1.5 kilograms of crack. Codefendants Martinez, Enriquez, and Mendez also admitted dealing crack during this time.

Clark and Cruz pleaded guilty. At sentencing the district judge found that because Clark and Cruz led the conspiracy, even if only for a short time, they could be held responsible for more than 1.5 kilograms of crack, since their coconspirators confessed to moving at least that much crack. That quantity of crack, combined with their criminal histories, put each man in an advisory sentencing guidelines range of 360 months to life. The judge sentenced each to 360 months for his role in the conspiracy.

Olaquez pleaded guilty *twice*. The first time, he struck a deal with the government and at his change-of-plea hearing admitted under oath that he was responsible for between 500 grams and 1.5 kilograms of crack cocaine. But when Olaquez did not cooperate as the government expected, the government moved to have his deal withdrawn and his guilty plea vacated. The district court granted the motion. Olaquez pleaded guilty a second time, this time challenging the drug quantity. At his change-of-plea hearing, Olaquez insisted that although he was responsible for more than fifty grams of crack, he was not responsible for more than 500 grams. He admitted, however, that the drug he sold was crack—snippets of several exchanges between Olaquez and the district judge establish the admission:

> Q: And other than the amount of drugs . . . you admit you did the things Mr. Porter described you did during that time period; is that correct?
>
> A: Yes.
>
> Q: You participated in meetings about the distribution of crack cocaine with your fellow gang members, is that correct?

A:  Yes.

. . . .

Q:  Would you agree that during this time period, you and all of your other gang members were involved in over 50 grams — in the distribution of over 50 grams — of crack cocaine?  Not just you alone, but that your other gang members . . . that together you were involved in distributing over 50 grams of cocaine base or crack cocaine?

A:  Yes.

. . . .

Q:  So, do you agree that that amount was in excess of 50 grams of cocaine base —

A:  Yes.

Q:  — or crack cocaine?

A:  Yes.

. . . .

Q:  And having reviewed the transcripts with your lawyer of what Mr. Porter said the government's evidence would show — other than the amount of crack cocaine, which we just talked about — is there anything else that you disagreed with? . . . .

A:  Naw, it's fine.  I don't disagree on nothing else but the drug amount.

At sentencing, however, Olaquez challenged both the quantity and type of drugs. The judge concluded that Olaquez's admission at his first change-of-plea hearing was convincing evidence that he was involved with more than 500 grams of crack, particularly in light of his coconspirators' admissions.  She also found, based on Olaquez's admissions at both change-of-plea hearings, that the drug was crack.  The judge sentenced Olaquez to 210 months in prison on the conspiracy charge.

All three defendants appeal their sentences.  Each claims that the district judge held them responsible for too great a drug quantity.  Olaquez also says the government did not prove that he conspired to deal crack.  We affirm all three

sentences.  Given the admissions by the three defendants as well as their codefendants, the district judge did not clearly err in concluding that Clark and Cruz were responsible for more than 1.5 kilograms of crack and Olaquez was responsible for between 500 grams and 1.5 kilograms of crack.

## II. Discussion

At sentencing after a guilty plea, the government has the burden of proving drug quantity and type (both of which are challenged in this appeal) by a preponderance of the evidence.  *United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004).  The government is not constrained by the rules of evidence, however, so it may offer evidence not admissible at trial.  *Id.*  We review the district court's finding of drug quantity and drug type for clear error, meaning we will reverse the district court only if we are left with the definite and firm conviction that a mistake has been made.  *United States v. Wilson*, 437 F.3d 616, 621 (7th Cir. 2006).

### A. Drug Quantity

Clark and Cruz contend that their involvement in the charged conspiracy was short—Clark says February 2001 until July 2001, Cruz never actually specifies a time period.  Accordingly, they believe the district judge erred by holding them accountable for 1.5 kilograms of crack, which they understand to be the amount of crack attributed to the entire five-year conspiracy.  That is the first fatal flaw in their argument: Judge St. Eve did not find that the conspiracy involved only 1.5 kilograms of crack (though she did find that some conspirators who were involved for the entire five years were responsible for only 1.5 kilograms, but that is not the same thing).

But there is another, more fundamental, flaw in Clark and Cruz's argument.  The sentencing judge is entitled to consider "information obtained during the plea hearings of co-defendants," *United States v. Hardamon*, 188 F.3d 843, 850 (7th Cir. 1999), and both men acknowledge that they may be held accountable for the amount of drugs in transactions they could have reasonably foreseen, *United States v. Salinas*, 62 F.3d 855, 859 (7th Cir. 1995).  Clark and Cruz do not challenge the findings that they were leaders of the conspiracy and that the West Town Latin Kings had meetings to discuss drug dealing and security.  Thus, the universe of foreseeable transactions for Clark and Cruz, even if only from February until July 2001, is reasonably large for a nine-to-fifteen-man conspiracy that sold drugs on a daily basis.  Codefendant Angel Serrano, for instance, admitted to dealing more than 1.5 kilograms of crack from February to July 2001.  That alone is enough to hold Clark and Cruz responsible for 1.5 kilograms.  But there is more.  Codefendant David Saez admitted to dealing between 500 grams and 1.5 kilograms during the same time.  Codefendants Martinez, Enriquez, and Mendez also admitted to dealing crack during this time.  Saez identified fifteen members of the West Town Latin

Kings and said he saw most of them selling crack on a regular basis. That is to say nothing of Cruz's admission that, by conservative estimates, he personally bought between roughly 700 grams and 1 kilogram of crack, which he intended to resell, between February 2001 and June 2003. There is more than enough evidence to show that Clark and Cruz, as leaders of the conspiracy who presided over meetings about the drug trade, could have reasonably foreseen 1.5 kilograms of crack trading hands even during the short time they were involved. The district court's finding is not clearly erroneous.

Olaquez's argument fares no better. The district judge found that Olaquez was responsible for between 500 grams and 1.5 kilograms of crack, based in part on his admission under oath during his first change-of-plea hearing. She noted that Olaquez was clearly admonished to tell the truth, and he openly admitted to his involvement with between 500 grams and 1.5 kilograms of crack. Olaquez contends that although his admission (under oath) from the first change-of-plea hearing does not go away simply because his plea was vacated, his testimony from the second change-of-plea hearing where he denied those amounts is more reliable. We have no idea why that should be—he was under oath in both situations. His first plea was vacated not for any irregularities or infirmities, but because he did not live up to the terms of the bargain. The judge had no obligation to accept his later testimony over the earlier. Our cases firmly establish that admissions of criminal conduct during a guilty plea are presumed true. *See, e.g.*, *Simelton v. Frank*, 446 F.3d 666, 670 (7th Cir. 2006); *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000); *United States v. Stewart*, 198 F.3d 984, 986 (7th Cir. 1999). Judge St. Eve was entitled to rely on Olaquez's earlier admissions.

In any event, Olaquez's coconspirators' pleas and statements also establish that he could have reasonably foreseen 500 grams to 1.5 kilograms of crack. Codefendants Enriquez, Martinez, Serrano, and Saez all admitted they sold crack with Olaquez. The gang meetings about drug sales and security make it difficult for any member of the conspiracy to argue that he did not know what the others were doing. Olaquez's admission during his first change-of-plea hearing and the corroborating statements from his codefendants are more than enough evidence to support the district judge's finding on drug quantity.

## B. Drug Type

Olaquez also challenges whether the government proved the drug was crack for purposes of the enhanced cocaine-base penalties of the sentencing guidelines. *See United States v. Edwards*, 397 F.3d 570 (7th Cir. 2005) (holding that for purposes of the enhanced penalties for crimes involving cocaine base the guidelines mean "crack" when they say "cocaine base"). The government may meet its burden by showing, among other things, that witnesses familiar with crack identified the substance as crack. *United States v. Linton*, 235 F.3d 328, 330 (7th Cir. 2000).

Indeed, Olaquez himself admitted the drugs were crack at his plea colloquies—*both* of them. *See, e.g.*, *United States v. Abdul*, 122 F.3d 477, 480 n.3 (7th Cir. 1997) ("[W]e find Abdul's admission supports the district court's later determination that the drug at issue was crack."). He also repeats the concession at least twice in his briefs. In addition, his coconspirators admitted the conspiracy involved crack. Saez admitted the conspirators sold "Nation Packs," which each contained ten rocks of crack. Serrano admitted the same. Saez's arrest report corroborates his testimony—he was caught with a baggie of sixteen small, white rocks. Cruz also discussed how the conspirators sold crack. Finally, the government's chemist testified that the substance tested positive as cocaine base, of which crack is a subset. Olaquez's admission coupled with the chemist's report is enough; his coconspirators' admissions and the physical characteristics of the drugs found on Saez do him in for good. *See, e.g.*, *United States v. Griffin*, 194 F.3d 808, 829 (7th Cir. 1999) (affirming finding that drug was crack when chemist said it was cocaine base, crack dealers said it was crack, and substance has physical appearance of crack). There was no clear error in the finding about drug type.

## III. Conclusion

Judge St. Eve did not clearly err when she found Clark and Cruz responsible for 1.5 kilograms of crack or when she found Olaquez responsible for between 500 grams and 1.5 kilograms of crack. Moreover, there is no clear error in her finding that Olaquez, like his coconspirators, was responsible for dealing crack. As a result, we see nothing unreasonable in the sentences challenged.

AFFIRMED.