In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-4736

CLYDE B. WILLIAMS,

*Petitioner-Appellant*,

*v.*

BYRAN BARTOW,

*Respondent-Appellee*.

---

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 C 89—**William C. Griesbach**, *Judge.*

---

ARGUED OCTOBER 19, 2006—DECIDED MARCH 20, 2007

---

Before RIPPLE, MANION and ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Petitioner Clyde Williams was convicted in the state courts of Wisconsin of three counts of first-degree sexual assault of a child. Following an unsuccessful motion for a new trial, he appealed his conviction to the Court of Appeals of Wisconsin. That court denied relief. *See State v. Williams*, 677 N.W.2d 691 (Wis. Ct. App. 2004), *review denied*, 679 N.W.2d 546 (Wis. 2004). He then filed a petition for habeas corpus in the United States District Court for the Eastern District of Wisconsin. *See* 28 U.S.C. § 2254. He alleged the same grounds for relief that he had presented to the Wisconsin

appellate court and also added several others. The district court denied relief, but granted a certificate of appealability with respect to several of Mr. Williams' claims, including the three that he raises in this court. *See* R.34, R.38. In this appeal, Mr. Williams asks us to review only those claims adjudicated on their merits in state court. For the reasons set forth in the following opinion, we affirm the district court's denial of Mr. Williams' petition.

# I

## BACKGROUND

### A. Facts

In 1990, two sisters, Annitra J. and Okima J., then five and six years old, respectively, told police that Mr. Williams had sexually assaulted them in the restroom of a public park. After some investigation, the prosecutor decided not to proceed because, at the time, there was an inadequate evidentiary basis.

Six years later, in 1996, Tyfonia S., also six years old, alleged that Mr. Williams had fondled her. She was with him on a day when he was purchasing a car from her mother's boyfriend, Thomas White. White was caring for Tyfonia and her siblings. The children went with White and Mr. Williams to Mr. Williams' mother's home to complete the transaction, and the assault apparently occurred in an elevator when Tyfonia was alone with Mr. Williams. Based on this incident, the State charged Mr. Williams with first-degree sexual assault of a child.

In 2001, after a series of trial-ending errors, a successful appeal, multiple re-trials and the addition of new

charges, Mr. Williams was convicted on counts arising out of *both* the 1990 and the 1996 incidents.

## B. The Wisconsin Proceedings

### 1.

During pretrial proceedings for Mr. Williams' first trial on a charge relating only to sexual assault of Tyfonia, the State sought a ruling allowing it to introduce the earlier incident involving Annitra and Okima as evidence of other crimes. The trial court declined to rule and, instead, instructed the State to raise the issue at trial, outside of the jury's presence. Mr. Williams' counsel then sought to introduce evidence of "the prior sexual experience" of Tyfonia, the six-year-old victim, "that relate[d] to her . . . fabricating this incident." *Williams*, 677 N.W.2d at 694 (quoting defense counsel) (omission in original). The court instructed counsel that a hearing would be necessary before any questions concerning the sexual history of any witness could be asked.

During the course of this first trial, the State called Angie R., Tyfonia's mother, who testified that Tyfonia said that Mr. Williams had penetrated her with his finger while they were in an elevator. On cross-examination, defense counsel asked Angie whether she was aware that her own boyfriend, White, with whom Tyfonia was sometimes left alone, "had sexually molested two children in the past." R.18, Tr.1 at 90. The State objected and the court considered the issue outside the presence of the jury. In defense of his question, Mr. Williams' attorney stated that he did not believe that he was bound by the court's earlier directive that a hearing would be necessary to resolve questions of admissibility relating to the sexual

history of any witness because the question did not involve *Tyfonia's* sexual experiences. The State requested a mistrial. In its view, the question was improper and highly prejudicial in light of the court's earlier ruling. After hearing arguments, the court asked Mr. Williams' counsel about the factual basis for the question posed to Angie. Following some discussion with counsel and with Mr. Williams himself, the court determined that there was no firm factual basis[1] and that, in any event, the question was improper because the acts implied in the question (sexual intercourse with "post-menstrual" teenagers), although "reprehensible," were so dissimilar from the sexual assault of a six year-old as to render the evidence irrelevant even had it been suggested with a good faith basis in fact. *Id.* at 97. In the colloquy with the judge concerning the question, defense counsel further admitted that he sought to introduce specific acts testimony to prove action in conformity therewith on the part of White, but asserted that it was permissible because White was not the defendant. *Id.* at 92-94. The court disagreed and, after considering counsels' arguments, stated that it saw no other alternative to a mistrial because the harm done before the jury was irremediable and "of such enormity in terms of the rules of evidence and its effect in the case that I don't think it's appropriate to continue with this case before this jury." *Id.* at 103.

---

[1] *See* R.18, Tr.1 at 93-100. Counsel originally stated that he could present evidence that White had fathered children to two fourteen year-old mothers in the past. *Id.* at 94. Upon examination by the court, it became clear that defense counsel had no such evidence; instead, it appeared that some eighteen years earlier, White had fathered the child of the defendant's twenty year-old sister.

Mr. Williams then moved to dismiss the information based on the mistrial. The court denied that motion, concluding that the question asked had been "provocative, prejudicial, immaterial and incendiary," *Williams*, 677 N.W.2d at 695, and gave the court no reasonable alternative but to declare a mistrial. These rulings form the basis of the double jeopardy argument made in this appeal.

**2.**

In July 1997, a second trial began, again limited to charges arising out of the assault on Tyfonia. In addition to Tyfonia's testimony, the State called both Annitra and Okima as part of its effort to establish motive. At the conclusion of this trial, Mr. Williams was convicted of one count of first-degree sexual assault of a child and sentenced to forty years' imprisonment. Mr. Williams moved for a new trial on the basis of ineffective assistance of counsel. His motion was granted by the trial court. The State filed an untimely appeal, which was dismissed by the Court of Appeals of Wisconsin in August 1999.

**3.**

The pre-trial proceedings in Mr. Williams' third trial for the sexual assault of Tyfonia then began. In October 1999, Mr. Williams orally and in writing demanded a speedy trial. His trial was set to commence on January 4, 2000, but was twice delayed because Tyfonia had moved out of state, and the prosecution had difficulty locating her. Trial was then set for June 14, 2000, but Mr. Williams requested a delay so that his new counsel could prepare. Trial was rescheduled for July 10, 2000; in an unrecorded pretrial

conference,[2] the State again requested a postponement because Annitra and Okima, set to testify as to Mr. Williams' other crimes, had been unable to travel from Texas to the trial. Mr. Williams' counsel apparently believed the adjournment was in Mr. Williams' best interest, primarily because the State apparently had indicated, upon failure of plea negotiations, that it intended to file an information regarding earlier incidents. Mr. Williams' counsel apparently hoped that some intervening event might prevent the State from adding those charges.

Shortly thereafter, the State did file an information that included additional charges based on the 1990 incident involving Annitra and Okima. These allegations were consolidated for trial with the allegations concerning Tyfonia. Mr. Williams requested that trial be postponed to allow him an opportunity to investigate the newly added charges. In November, the trial was again postponed with Mr. Williams' consent and rescheduled to February 2001. However, due to ensuing court conflicts, Mr. Williams' request for juvenile court records of Annitra and Okima and the scholastic schedules of the child witnesses, the trial was pushed back to June 18, 2001.

Shortly before trial, Mr. Williams moved to dismiss based on prosecutorial vindictiveness. He argued that the additional charges were in retaliation for his earlier successful appeal. The court denied his motion; it concluded that the testimony of Annitra and Okima in the second trial provided an adequate basis to explain the prosecutor's decision to pursue charges that were previously thought

---

[2] The trial judge summarized the conference at a July 10, 2000 teleconference with both parties. R.19, Tr.15 at 1-5.

unprovable. The next day, the State again requested an adjournment because of the unavailability of witnesses.

The third trial eventually began July 16, 2001. It ended in an unopposed mistrial because of an improper remark by the prosecution in the presence of the jury. R.20, Tr.30 at 55.

### 4.

The fourth trial began on July 17, 2001. Mr. Williams was convicted of all three counts of first-degree sexual assault of a child. He then filed a motion for a new trial. The trial court denied the motion with respect to all counts, but determined that the sentence was in excess of the statutory maximum in effect at the time in Wisconsin.

Mr. Williams took an appeal to the Court of Appeals of Wisconsin. That court, reaching the merits of his submissions, affirmed the judgment of the trial court. *See Williams*, 677 N.W.2d 691. A petition for review was denied in the Supreme Court of Wisconsin. *See Williams*, 679 N.W.2d 546. We shall set forth the pertinent parts of the holding of the Court of Appeals in the discussion that follows.

### C. Habeas Corpus Proceedings in the District Court

Mr. Williams then filed this habeas petition in the Eastern District of Wisconsin. Undertaking the screening function under Rule 4 of the *Rules Governing Section 2254 Proceedings in the United States District Courts*, the district court allowed him to proceed on six claims, including that his prosecution was vindictive and violated the Double Jeopardy Clause and that he was denied his right to a speedy trial. The court examined the claims under the standard of

review provided in the Antiterrorism and Effective Death
Penalty Act ("AEDPA"), 28 U.S.C. § 2254, and denied the
writ.[3] We shall set forth the holding of the district court
with respect to each of the issues now raised in this
court in the discussion that follows.

## II

## DISCUSSION

### A.  Standard of Review

In this federal habeas corpus case, alleging constitu-
tional error in a state court criminal conviction, we re-
view de novo the district court's decision denying the
writ. *Burgess v. Watters*, 467 F.3d 676, 681 (7th Cir. 2006),
*cert. denied*, 75 U.S.L.W. 3438 (U.S. Feb. 20, 2007) (No. 06-
8943). We review issues of fact resolved by the district
court for clear error. *Adams v. Bertrand*, 453 F.3d 428, 432
(7th Cir. 2006). In doing so, we, like the district court, must
evaluate the decision of the last state court to have adjudi-
cated the petitioner's claim on the merits, according to the
standards set forth in AEDPA, 28 U.S.C. § 2254. *See Simelton
v. Frank*, 446 F.3d 666, 669-70 (7th Cir. 2006), *cert. denied*, 75
U.S.L.W. 3168 (U.S. Oct. 2, 2006) (No. 05-11643). In this
case, the operative decision is that of the Court of Appeals
of Wisconsin, *State v. Williams*, 677 N.W.2d 691 (Wis. Ct.
App. 2004).

---

[3]  No certificate of appealability was granted as to Mr. Williams'
Ex Post Facto claim. In addition to the three claims presented in
this appeal, a certificate was granted on Mr. Williams' ineffective
assistance of appellate counsel and due process claims, but
he has not pressed those arguments before this court. *See* R.38
at 2.

Under AEDPA, when a state court actually has adjudicated a petitioner's claims on their merits, a federal habeas court may grant relief only when the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is contrary to clearly established law if the state court applied a rule that contradicted the governing law as set forth in Supreme Court cases, or if, being confronted with a set of facts materially indistinguishable from those examined by Supreme Court precedent, the state court arrived at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Alternately, a state court decision involves an unreasonable application of clearly established law if the state court identifies the correct rule and unreasonably applies it to the facts, or if the state court unreasonably extends, or refuses to extend, a rule of law. *Id.* at 407-08. In determining whether Supreme Court precedent has been applied unreasonably, we do not ask simply whether the state court's application was erroneous, or even clearly erroneous, but whether the decision was "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003); *Badelle v. Correll*, 452 F.3d 648, 654 (7th Cir. 2006) (citing *Williams*, 529 U.S. at 410). To draw the line between reasonable errors, which will stand in federal habeas review, and unreasonable ones, upon which we shall grant the writ, we must distinguish between those decisions "which comport with recognized conventions of legal reasoning," *Ward v. Sternes*, 334 F.3d 696, 703 (7th Cir. 2003), and those which "l[ie] well outside the boundaries of permissible

differences of opinion," *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

In this deferential and limited review, state court factual findings are presumed correct. A habeas petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Each of Mr. Williams' claims actually was adjudicated on its merits in the Court of Appeals of Wisconsin, and, therefore, we are bound by the above AEDPA standards with respect to all of his claims.

## B. Double Jeopardy

Mr. Williams contends that the declaration of a mistrial in his first trial was inappropriate under the circumstances and saved the prosecution from the "disastrous" first trial. Appellant's Br. at 11. The result, he claims, was that he was placed twice in jeopardy for offenses arising out of the 1996 assault on Tyfonia.

### 1.

The Court of Appeals of Wisconsin held that the trial judge was correct in concluding that manifest necessity supported the mistrial. *Williams*, 677 N.W.2d at 697-700. The court's decision carefully traced the basic principles of double jeopardy established by the holdings of the Supreme Court of the United States. It noted that the state has the burden of establishing "manifest necessity" for any mistrial ordered over the objection of a defendant. *Id.* at 697. It recognized as well that, in assessing the "necessity" of granting a mistrial in the face of a prejudicial statement of counsel, great respect was owed to the estimation of the

trial judge about the extent of the prejudice caused by the utterance. *Id.* at 697-98. Turning to the circumstances of Mr. Williams' case, it noted that the risk of prejudice here was of the same kind as that at stake in *Arizona v. Washington*, 434 U.S. 497 (1978) (upholding the decision to grant a mistrial in response to a prejudicial remark made by defense counsel). Turning to the record, it noted that the statement had been made after the trial judge had directed that such inquiries were to be made only after obtaining clearance from the judge. The trial judge also carefully questioned counsel and found that the question to the witness lacked a firm basis in fact. The court was of the view that the trial court had then "entertained Williams' suggestion that the court 'try to save the trial' but rejected it stating that 'the State has been very seriously harmed. And I don't know any alternative but declare a mistrial.' " *Williams*, 677 N.W.2d at 700. The appellate court concluded:

> The record, therefore, persuades us that the trial judge acted responsibly and deliberately and accorded careful consideration to Williams' interest in having the trial concluded in a single proceeding. Since the trial judge exercised "sound discretion" in handling the sensitive problem of possible juror bias created by the improper question by Williams' counsel, the mistrial order is supported by the "high degree" of necessity that is required in a case of this kind.

*Id.*

### 2.

The district court considered this contention in adjudicating the present § 2254 petition. It determined that the

Wisconsin appellate court had considered thoroughly the relevant issues and had applied correctly Supreme Court precedent, particularly *Arizona v. Washington*. R.34 at 4. The court then concluded that, on the facts, the decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent and denied relief.

### 3.

The Fifth Amendment's Double Jeopardy Clause, applied to the states by the Fourteenth Amendment, guarantees that no one shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause unequivocally protects a defendant from retrial for the same offense after an acquittal. *Washington*, 434 U.S. at 503. Moreover, because jeopardy attaches prior to judgment, the protection also reaches a criminal defendant's "valued right to have his trial completed by a particular tribunal," and to be spared from the burdens of multiple trials, even if those trials do not finally resolve the merits of the charges. *Id.* at 503.

At times, this right is "subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Id.* at 505. Generally, "the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Id.* The Supreme Court has noted that it is not a literal necessity that must be shown, but necessity of a "high degree." *Id.* at 506.

As a general rule, a reviewing court is charged with determining whether the trial court's decision that a

mistrial was justified by manifest necessity was an abuse of discretion. *See United States v. Vaiseta*, 333 F.3d 815, 818 (7th Cir. 2003). However, within this general standard, varying degrees of scrutiny are applied depending on the nature of the precipitating event. *See Washington*, 434 U.S. at 507-09. Different trial situations are amenable to different degrees of appellate scrutiny. Indeed, in *Washington*, the Court pointedly held that, when a mistrial is granted in response to an improper remark by defense counsel, the decision of the trial court was entitled to special deference. *Id.* at 510. This approach was necessary because "[t]here are compelling institutional considerations militating in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias." *Id.* at 513; *see also id.* at 516 ("Neither party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, the public's interest in fair trials designed to end in just judgements must prevail over the defendant's valued right to have his trial concluded before the first jury impaneled." (internal quotation marks omitted)). Nevertheless, despite that high degree of deference, a reviewing court still must satisfy itself that the trial court exercised its "sound discretion" and acted "responsibly and deliberately" in declaring a mistrial. *Id.* at 516.

We turn, therefore, to the decision of the Court of Appeals of Wisconsin to determine whether its evaluation of Mr. Williams' double jeopardy claim is contrary to or an unreasonable application of the above standard. In Mr. Williams' case, a mistrial was declared following his counsel's question to a State witness regarding potential criminal sexual misconduct of another witness. *Williams*, 677 N.W.2d at 694. In evaluating Mr. Williams' claim, the State applied the standards set forth in *Washington*. Because

it neither applied an improper legal standard, nor reached a conclusion opposite to the Supreme Court on materially indistinguishable facts, the decision of the Court of Appeals of Wisconsin is not "contrary to" Supreme Court precedent under *Williams v. Taylor*, 529 U.S. at 405-06.

We therefore must consider whether the Wisconsin appellate court's application of the law to facts of the instant case was unreasonable. In concluding that the mistrial was within the discretion of the trial court, the Wisconsin appellate court focused on the improper nature of the question, given the trial court's earlier instruction that evidentiary questions involving the sexual history of any witness were to be aired outside the hearing of the jury, the general irrelevance of the question posed to the case and its lack of a firm basis in fact. *Williams*, 677 N.W.2d at 699. The court also weighed the interest of the defendant in enduring retrial against the highly prejudicial effect of the question. The court noted that the parties had a "full opportunity to explain their positions," *id.* at 699-700, and that the trial judge acted "responsibly and deliberately," *id.* at 700, in concluding that the prejudice could not be overcome.

We conclude that the decision of the Court of Appeals of Wisconsin was not an unreasonable application of clearly established Supreme Court law. It recognized that *Washington* requires that an appellate tribunal give a broad range of discretion to a trial judge in estimating the degree of juror bias precipitated by the remark of counsel. The Wisconsin appellate tribunal reasonably decided that there was no material distinction between the situation confronted in *Washington*, in which a prejudicial remark was made by the defense attorney in opening arguments, and the situation here, in which a question of similar prejudicial effect is improperly put to a witness.

Consequently, habeas relief was properly denied on this basis.

## C. Vindictive Prosecution

Mr. Williams next submits that the addition of charges relating to the 1990 incident involving Annitra and Okima, after he had gained a new trial on the original charge and declined to enter into a plea agreement relating to the originally charged 1996 offenses, amounts to vindictive prosecution.

### 1.

The Court of Appeals of Wisconsin began its analysis of this issue by acknowledging that the Supreme Court of the United States had recognized in *Blackledge v. Perry*, 417 U.S. 21, 25-29 (1974), and *Thigpen v. Roberts*, 468 U.S. 27, 30-33 (1984), that a presumption of vindictiveness arises when, following a defendant's successful appeal, greater punishment is sought by a prosecutor. The state appellate court was quick to point out, however, that, in both of those cases, the prosecutor had increased the gravity of the charge faced by the defendant *for the same conduct as alleged in the original charge.* By contrast, in this case, the prosecutor had decided to charge Mr. Williams with an entirely different crime, based on entirely different facts, against an entirely different victim, and having occurred in an entirely different time period six years earlier. Relying on a decision of the United States Court of Appeals for the Eleventh Circuit in *Humphrey v. United States*, 888 F.2d 1546, 1549 (11th Cir. 1989), the Wisconsin court took the view that this distinction is a valid one. *Williams*, 677

N.W.2d at 703. It ruled that, while the situation in *Blackledge* and *Thigpen* raised the distinct possibility that a defendant would be chilled from the exercise of his appellate rights if he believed that a successful appeal would result in a second trial on more serious charges for the same conduct, the same concern was not present when the prosecutor brings charges based on other conduct. In this latter situation, the Wisconsin court continued, it is not the defendant's appeal that creates the opportunity to bring the other charges; the prosecutor may proceed on the separate charges whether the defendant takes an appeal in the original case or not. *See id.* at 704. Moreover, added the court, in this case, the prosecutor had acquired new reasons for bringing the charges based on the earlier incident—the testimony of the two alleged victims from the first trial. Although the prosecutor had had the police reports with the statements of the two young victims for six years, now he had their *testimonial* account under oath and subject to cross-examination. Under these circumstances, said the Wisconsin court, the decision to charge Mr. Williams with the earlier assaults is characterized most appropriately as a new approach by a new prosecutor. *See id.* The court also noted that the fact that the prosecutor had threatened to add these charges if Mr. Williams did not plead guilty to the original charge did not amount to vindictiveness. *See id.* at 705; *Bordenkircher v. Hayes*, 434 U.S. 357, 360-65 (1978) (holding that the Due Process Clause is not violated when a prosecutor carries out a threat to reindict a defendant on more serious charges to which he is subject following unsuccessful plea negotiations).

**2.**

On habeas review, the district court held that the Wisconsin court had interpreted reasonably the case law of the Supreme Court of the United States. The district court concluded that the state court had read correctly Supreme Court precedent to find a presumption of vindictiveness when a prosecutor brings more serious charges against a defendant based on the same underlying conduct. The district court also agreed that these cases were inapplicable where, as here, the new charges related to *different* underlying conduct. R.34 at 5-6 (citing *Humphrey*, 888 F.2d at 1549).

**3.**

**a.**

The Due Process Clause of the Fourteenth Amendment has been interpreted to prohibit prosecutions under circumstances suggesting a "realistic likelihood of 'vindictiveness' " on the part of the prosecutor. *Blackledge*, 417 U.S. at 27. In *Blackledge*, and again in *Thigpen*, the Supreme Court established that a presumption of vindictiveness follows certain prosecutorial decisions.[4] The factual circumstances of both of these cases involved a defendant who had been convicted on various misdemeanor counts, succeeded in appealing his conviction, and, on retrial, the state prosecutor in each chose to prosecute *the same* under-

---

[4]  Mr. Williams does not argue that he has demonstrated actual vindictiveness; he contends exclusively that he is entitled to a presumption of vindictiveness under the circumstances of his prosecution following a successful appeal.

lying conduct under a felony charge. The Supreme Court characterized the situations as posing a "realistic likelihood of vindictiveness" because "the prosecutor, who has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo* [can] make retaliatory use of his power to up the ante." *Thigpen*, 468 U.S. at 30 (internal quotation marks omitted) (italics in original).

Neither the Supreme Court nor this court has addressed directly the applicability of *Thigpen* and *Blackledge* to situations where the defendant is charged, post-appeal, on the basis of *different* criminal conduct, as opposed to a heightened charge on the basis of the same underlying conduct. As both the state court of appeals and the district court noted, the Eleventh Circuit has ruled that, because *Blackledge* and *Thigpen* do not address prosecutorial action involving *other* criminal conduct, the presumption of vindictiveness invoked by the Supreme Court in those cases is not applicable. Therefore, when the prosecutorial conduct involves *other* criminal conduct, the defendant must demonstrate actual vindictiveness rather than relying on the presumption recognized in *Blackledge* and *Thigpen*. *See Humphrey*, 888 F.2d at 1549.[5] The Ninth Circuit has reached the same conclusion. In *United States v. Martinez*, 785 F.2d 663 (9th Cir. 1986), that court said:

> If the additional charge "aris[es] out of the same nucleus of operative facts as the original charge," a

---

[5] *Humphrey v. United States*, 888 F.2d 1546 (11th Cir. 1989), evaluated a claim by a defendant that the state issued an indictment charging him with other crimes based on other conduct in retaliation for an on-going direct appeal and a collateral attack on his first conviction. *Id.* at 1549.

presumption of vindictiveness is raised. If, however, the second charge is unrelated to the first, the presumption does not arise. . . .

> . . . . Nothing in *Blackledge* [*v. Perry*] presumed to give the defendant a free ride for separate crimes he may have committed, or to prevent a prosecutor from bringing new charges as a result of changed or altered circumstances which properly bear on prosecutorial discretion.

*Id.* at 669 (internal citations omitted) (bracketed alterations in original) (finding a presumption of vindictiveness inappropriate when Arizona authorities filed charges against the defendant only after he was acquitted on unrelated charges in Colorado).

Our task in evaluating Mr. Williams' contention is to determine whether the resolution of the vindictive prosecution issue by the Court of Appeals of Wisconsin was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The Wisconsin appellate court interpreted *Thigpen* and *Blackledge* in accord with the Eleventh Circuit's decision in *Humphrey* and the Ninth Circuit's decision in *Martinez.* We cannot conclude that *Blackledge* and *Thigpen* clearly establish a different rule than that applied by the Wisconsin court. Nor can we say that the facts of those cases are materially indistinguishable from this case such that we might deem the decision of the Wisconsin court "contrary to" Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. at 405-06. Moreover, we cannot say that the Wisconsin court's decision involved an "unreasonable

application" of that precedent in that the state court could be said to have unreasonably refused to extend the precedent to cover the issue. *Blackledge* and *Thigpen* rely on the chilling effect of prosecutorial decisions that appear to punish a defendant for exercising his federally protected rights. *See Blackledge*, 417 U.S. at 27-28. While expressly stating that there was no evidence of bad faith on the part of the prosecutor, the Court noted that it was constitutionally impermissible for the State to "respond" to the defendant's invocation of his right to a de novo trial with a greater charge. *Id.* at 28-29.

Here, by contrast, it is not evident that the state court "responded" to a successful appeal with more significant charges; instead, it brought those *additional* charges while in the course of pursuing a retrial on the *same charge* related to the 1996 event. Moreover, as the Wisconsin court emphasized, the prosecutor now had the trial testimony of the two victims, given under oath and subjected to cross-examination. Previously, he had only the police report statements of two very young children. These circumstances were therefore vastly different from those confronted by the original prosecutor in the 1990 incident, when Annitra and Okima were the five and six year-old victims (who were, presumably, incapable of substantial testimony, even assuming, for the sake of argument, that they were able to take and understand the oath). As fifteen and sixteen year-olds, they were better suited to offer testimony, and the trial court found that this change alone established "abundant reason, other than vindictiveness which would explain the conduct of the district attorney." R.20, Tr.27 at 16. In affirming that ruling, the state appellate court stated, "[a]rmed with the knowledge [on the basis of their testimony in an earlier trial] that the

witnesses were credible and their testimony could withstand cross-examination, the charging prosecutor felt he could prove the case." *Williams*, 677 N.W.2d at 704. These circumstances simply are not cut of the same cloth as the ones that confronted the Supreme Court in *Blackledge* and *Thigpen. See United States v. Heidecke*, 900 F.2d 1155, 1160 (7th Cir. 1990) ("The existence of a rational reason for the [subsequent] indictment further suggests that there is no reasonable likelihood of vindictiveness.").

Given both that two Courts of Appeals have held that the bringing of unrelated charges stands outside the *Blackledge-Thigpen* presumption and that the factual circumstances of this case indicate legitimate reasons for adding charges related to separate incidents involving trial witnesses, we certainly cannot say that this decision of the Court of Appeals of Wisconsin lies so far outside the bounds of permissible interpretations of Supreme Court precedent to qualify as objectively unreasonable under *Williams v. Taylor*.

### b.

Likewise, we must conclude that the Court of Appeals of Wisconsin did not apply clearly established federal law unreasonably in holding that the decision to add further charges following an unsuccessful attempt to obtain a plea also did not give rise to a presumption of vindictiveness. In *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), the Supreme Court held that a prosecutor's addition of charges following unsuccessful plea negotiations did not violate due process when the prosecutor fully disclosed the alternatives and the defendant was plainly subject to prosecution on the additional charges. The Court acknowl-

edged that, when a state uses the tools in its prosecutorial arsenal to retaliate and punish a defendant for the exercise of a federally protected right, its action is unconstitutional. *Id.* at 363. It further held, however, that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id.*; *see also United States v. Goodwin*, 457 U.S. 368 (1982) (declining to adopt a presumption of vindictiveness where a prosecutor adds felony charges to an original misdemeanor indictment after the defendant declines a plea offer and insists on a jury trial). In short, the Supreme Court has applied a presumption of vindictiveness "exclusively in the post-trial context," *United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006), and has specifically considered and rejected claims that a presumption is applicable when, following failed plea negotiations, additional charges are brought against a defendant. We already have concluded that the Wisconsin courts did not unreasonably apply federal law in holding that the appeal and retrial circumstances in this case did not justify application of the presumption; we decline to hold that clearly established federal law dictates a different result when, on retrial, unsuccessful plea negotiations lead to additional charges.

Accordingly, we affirm the district court's denial of habeas relief to Mr. Williams on his claim of vindictive prosecution.

### D. Speedy Trial

Finally, Mr. Williams contends that his right to a speedy trial was violated by the substantial delays involved in his final trial.

**1.**

In his state appeal, Mr. Williams claimed that, of the delay of nearly three years, just over *one year* was fairly attributable to the prosecution. The Court of Appeals of Wisconsin disagreed; it regarded this characterization of the delay as too generous to Mr. Williams. In reaching this conclusion, the state appellate court undertook a detailed examination of each delay, and concluded that no more than four months of delay were attributable to the State. At the beginning of its analysis, the court set forth its approach. First, it would identify the delays attributable to the defendant because those periods cannot be considered in determining whether the defendant was denied a speedy trial. *Williams*, 677 N.W.2d at 700. Second, it would identify the delay caused by the State.[6] Third, it would require an explanation by the State for all such periods. To be a valid reason, continued the appellate court, the delay must be one intrinsic to the case itself.

Having set forth its methodology, the court then engaged in a fact-specific and detailed examination of the delays in this case. In the course of that examination, the appellate court held that adjournments requested by the State as it

---

[6] Notably, the Court of Appeals of Wisconsin also identified a third type of delay, those attributable to the ordinary demands of the judicial system and therefore not attributable to either party. *State v. Williams*, 677 N.W.2d 691, 701 (Wis. Ct. App. 2004). However, the court did acknowledge that instances of "institutional delay," *id.* at 702,—not attributable to the "ordinary demands of the judicial system," *id.* at 701,—are attributable to the State.

awaited word from its witnesses, who had relocated out of state, were not delays fairly attributable to the prosecution in the speedy trial analysis.

**2.**

The district court found that Mr. Williams' speedy trial claim properly was denied under *Barker v. Wingo*, 407 U.S. 514 (1972). Although several years passed between the bringing of charges and the commencement of Mr. Williams' trial, the court noted that the state court had found that most of the delay was either due to Mr. Williams' "own affirmative conduct . . . or was not fairly attributable to any actions of the prosecutor." R.34 at 6-7. Given the relative shortness of the delay attributable to the State, and that Mr. Williams himself had not consistently demanded a speedy trial, the district court found that the state court's resolution of the issue was "not erroneous, much less unreasonable," and denied the petition on this ground as well. *Id.* at 7.

**3.**

The Sixth Amendment guarantees that a criminal defendant enjoys "the right to a speedy and public trial." U.S. Const. amend. VI. The Supreme Court elaborated on the substance of this right in *Barker v. Wingo*, 407 U.S. 514 (1972). Acknowledging that the speedy-trial right is a circumstance-specific inquiry that is ill-suited for absolute rules, *Barker* nevertheless provides a practical analytical approach that ensures that, in evaluating the facts of a particular case, courts take into account both the interests of the prosecution and of the defendant through the

application a four-factor balancing analysis. *Id.* at 530. Under this approach, a court must consider the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.*

The length of the delay serves as a "triggering mechanism," *id.*; without some presumptively prejudicial lapse of time, there is no need to examine the rest of the factors, *id*. In this case, the State conceded, and the Court of Appeals of Wisconsin agreed, that the period of two years and eleven months, following the defendant's successful appeal of his first conviction and the commencement of his third trial, was presumptively prejudicial and triggers the analysis set forth in *Barker. See Williams*, 677 N.W.2d at 700.

*United States v. Loud Hawk*, 474 U.S. 302, 315 (1986), characterizes the second *Barker* factor, the reason for the delay, as "[t]he flag all litigants seek to capture." The Court of Appeals of Wisconsin was therefore correct in treating as a critical factor the comparative fault of the parties in causing the resulting delays. Mr. Williams does not challenge this general proposition. Indeed, in challenging the appellate court's apportionment of fault in the delays, Mr. Williams points to no precedent of the Supreme Court that requires an opposite conclusion with respect to any particular instance of delay. Instead, he principally seeks to charge the State with delays resulting from its inability to secure witnesses.[7] In evaluating this claim, we note that *Barker* explicitly noted that the location of a missing witness is a valid reason for delay. 407 U.S. at 531. In our own interpretation of *Barker*, we have suggested that, in the absence of some showing by the defendant that "the

---

[7] Appellant's Br. at 27-29.

missing witness was a deliberate attempt to delay the trial in order to hamper the defense," we shall not charge the State with that delay. *Owens v. Frank*, 394 F.3d 490, 505 (7th Cir. 2005) (internal citation and quotation marks omitted). Accordingly, there is no reason to conclude that the Court of Appeals of Wisconsin unreasonably applied Supreme Court precedent in determining that the delay attributable to the State amounted to four months.

In evaluating Mr. Williams' assertion of the right to a speedy trial, the third *Barker* factor, the Court of Appeals of Wisconsin noted that Mr. Williams had been inconsistent in his assertion of his speedy trial right, either by causing certain delays himself or by consenting to delays requested by the State. Before this court, Mr. Williams points to instances in which he asserted his right or objected to the State's request for an adjournment. The Court of Appeals did not dispute that Mr. Williams had raised the speedy trial issue; instead, it concluded that the fact that he did not *uniformly* assert his right "significantly diminish[ed] the weight of his demand." *Williams*, 677 N.W.2d at 702. Mr. Williams cites no authority that contradicts this approach; indeed, our own precedent could be read to support the methodology of the Court of Appeals of Wisconsin, *see United States v. Taylor*, 196 F.3d 854, 862 (7th Cir. 1999) (concluding, when a defendant had raised his speedy trial right simultaneously with his own request for delay, the inconsistency makes his "demand" "entitled to little, if any, weight").

The Court of Appeals of Wisconsin did not consider extensively the issue of actual prejudice to the defendant. It simply remarked, in conclusory fashion, that the delays were not prejudicial. We must conclude, however, that Mr. Williams has made no persuasive showing that

he was prejudiced by the delay in prosecuting his third trial. *Barker* identifies three interests in light of which a defendant's claim of prejudice should be evaluated: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532. Mr. Williams contends that he was prejudiced with respect to the third interest. Specifically, he claims that the defense was prejudiced with regard to "key timing issues," Appellant's Br. at 31; essentially, he claims that the witnesses' memories had gone stale and that additional witnesses able to provide probative testimony relating to timing in 1990 could not be identified for the court in 2001. In each circumstance, however, he does not make clear how the delays he has identified were responsible for any prejudice.

We must conclude that on his speedy trial claim, like the others raised in this proceeding, Mr. Williams has failed to demonstrate that the decision of the Court of Appeals of Wisconsin is contrary to, or involves an unreasonable application of, clearly established law as articulated by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

## Conclusion

For the reasons stated above, we affirm the district court's denial of Mr. Williams' petition.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*